IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Maurice Anthony Odom, Sr., | ) | Civil Action No. 8:13-cv-02878-TMC-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

## PROCEDURAL HISTORY

In March 2010, Plaintiff filed applications for DIB and SSI, alleging disability beginning November 16, 2009. [R. 218–31.] The claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. 68–82, 108–12, 118–21.] On June 3, 2011, an attorney advisor issued a fully favorable decision on Plaintiff's claims. [R. 83–90.] On August 31, 2011, the Appeals Council decided to review the decision *sua sponte* and gave Plaintiff an opportunity to submit additional evidence and arguments. [R. 138–42.] On September 21, 2011, the Appeals Council reversed and remanded the matter, finding that the attorney advisor had not resolved significant evidentiary conflicts, assessed Plaintiff's work-related abilities, or addressed evidence indicating possible fraud, and further ordering consideration of additional medical and earnings-related evidence on remand. [R. 96–101.] On October 3, 2011, the Appeals Council issued an amended remand order, addressing additional evidentiary submissions from Plaintiff. [R. 103–07.]

It appears Plaintiff filed a request for hearing before an administrative law judge ("ALJ") on February 22, 2011, [R. 137], and the hearing was scheduled for March 22, 2012. On March 20, 2012, it appears that Plaintiff's caregiver and Plaintiff sent a letter[3] by facsimile to an SSA hearing officer, and Plaintiff's caregiver spoke to the SSA hearing officer by telephone, to request that Plaintiff's hearing be postponed to another date because he did not have proper representation due to his lawyer withdrawing from the case at the last minute because he could not practice law in Augusta, Georgia, the site of the

---

[3]The letter appears to show the signatures of both Plaintiff and Plaintiff's caregiver. [R. 67.]

hearing.[4] [R. 67, 363.]  Additionally, Plaintiff indicated he did not have transportation to the hearing. [R. 67.]  The letter also asked whether the judge could make a decision based on the medical records he already had.  [*Id.*]  On March 20, 2012, the SSA hearing officer told Plaintiff's caregiver that it would be better to appear at the hearing and then request a postponement. [R. 363.]  On March 21, 2012, the ALJ denied Plaintiff's request for a postponement because the case had been in the system long enough and medical expert had been scheduled for the hearing.  [R. 66.] On March 21, 2012, the SSA hearing officer left a voicemail for Plaintiff's caregiver that the judge had denied the request for postponement and she and Plaintiff should be present at the hearing set for the next day. [R. 364.]  On March 22, 2012, the SSA hearing officer spoke with Plaintiff's caregiver on the telephone, and Plaintiff's caregiver stated that "her car was wrecked and she couldn't find transportation for either she or Mr. Odom and she just wanted Judge Northington to base her decision on the records already submitted." [R. 365.] On March 22, 2012, the ALJ held a hearing at which a medical expert appeared in person and a vocational expert testified via telephone.  [R. 40–64.] The ALJ explained at the hearing on the record that his staff had contacted the claimant and his spouse to determine whether Plaintiff wanted a continuance to obtain counsel or requested a decision based on the evidence of record; and, the ALJ stated that Plaintiff and his spouse had communicated they were having car problems and "have requested that I adjudicate the matter on the record." [R. 42–43.]

---

[4]Records show that Plaintiff's counsel, Mary lou Seymour withdrew from representation on February 17, 2011.  [R. 126.]  On February 16, 2012, Plaintiff's counsel, Gregory K. Kornegay, withdrew from representation and waived his right to collect any fee. [R. 203.] Neither letter provides a reason for withdrawal.

On June 14, 2012, the ALJ issued a decision finding that Plaintiff was not disabled. [R. 16–32.]  At Step 1[5], the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on June 30, 2013, and had not[6] engaged in substantial gainful activity since November 16, 2009, the alleged onset date.  [R. 18, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the severe impairment of paranoid schizophrenia. [R. 19, Finding 3.]  The ALJ also found Plaintiff had the following non-severe impairments: a history of hemorrhoids and genital herpes.  [*Id.*]  At Step 3, the ALJ determined Plaintiff's impairments or combination of impairments do not meet or medically equal the severity of one of the listed impairments, considering specifically Listing 12.03.  [R. 19–21,  Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of work at all exertional levels, which implicitly includes the performance of medium, light, and sedentary work as defined by the Dictionary of Occupational Titles and the Regulations.  He has no identifiable limitations for sitting, standing and/or walking in an eight-hour workday. In addition, the claimant does not have any postural limitations. Secondary to his mental impairments, he retains the capacity to understand, remember, and carry out simple instructions; and perform simple, routine tasks as consistent with unskilled work. In the course of work, the claimant is to have no contact

---

[5]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[6]The ALJ decision actually states "claimant has engaged in substantial gainful activity . . . ."  However, the following paragraph explained that the work the claimant had performed after November 16, 2009, was not considered to be substantial gainful activity. Thus, the Court believes that Finding 2 contains a typo.

> with the general public and only occasional contact with coworkers. The claimant is able to perform sustained work activity on a regular and continuous basis for eight hours per day, forty hours per week.

[R. 21, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform past relevant work as a Fabric Inspector.  [R. 30, Finding 6.]    However, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs in significant numbers in the national economy that the claimant can perform. [R. 30, Finding 10.]  Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from November 16, 2009, through the date of the decision.  [R. 31, Finding 11.]

Plaintiff, represented by his "caregiver," Tometrius Williams[7], appealed the decision administratively [R. 8], and on September 5, 2013, the Appeals Council denied the request for review, making the ALJ's decision final for purposes of judicial review. [R. 1–5.] Plaintiff, now acting pro se, brought this action pursuant to 42 U.S.C. § 405(g).

## THE PARTIES' POSITIONS

Plaintiff, proceeding pro se, contends he is entitled to disability benefits due to his mental illness.  [*See generally* Doc. 42; Doc. 47.]  Giving liberal construction to the pro se briefs as it is required to do, the Court gleans the following grounds of appeal.  Plaintiff's legal rights to attend and testify at the hearing before the ALJ, and to be represented by counsel at the hearing, were violated by the ALJ's refusal to postpone the hearing.  [Doc.

---

[7]Ms. Williams is alternately referred to as Plaintiff's wife [*see, e.g.*, R. 228, 267, 480] or caregiver [R. 66, 366].  There are also references in the record to telephone conversations with "Teresa, Mr. Odom's caregiver"—presumably, also references to Ms. Williams. [R. 363.]

42 at 4–5.]  He also argues his hearing should have been held in Aiken, South Carolina, where his case was filed; because his hearing was held in Augusta, Georgia, his attorney could not represent him as he was not licensed to practice there.  [*Id.*; Doc. 47 at 2–3.] Plaintiff alleges "[t]he hearing officer acted corruptly and unprofessional in that manner knowing we were right but chose to do nothing." [Doc. 42 at 4.] Plaintiff also contends the favorable decision finding him disabled by the Attorney Advisor should have been upheld. [*Id.* at 4–5.]  Plaintiff also appears to argue the ALJ failed to consider the fact that he was in special education classes in school, was a remedial student, and was considered mentally impaired.[8]  [*Id.* at 5.]  Plaintiff contends that there is no way a person can function on a daily basis or hold down a daily job with the amount of medication he is required to take, and the Administration should have adopted the opinions of his doctors who found "agree with is mental disorder in his favor."  [Doc. 47 at 1–2.] Plaintiff also contends his work history has nothing to do with the level of his disability and that "as time goes by the years or he losing his mind later."  [*Id.* at 3.] Ultimately, Plaintiff argues there is no work for a patient with his criteria considering his diagnosis, his medication, and his criminal record. [*Id.* at 4.]

The Commissioner contends the ALJ's decision should be affirmed because it is legally sound and supported by substantial evidence.  [Doc. 53.]

## STANDARD OF REVIEW

**Liberal Construction of Pro Se Complaint**

---

[8]The Court notes there is no evidence in the record substantiating these claims by Plaintiff. [*See* R. 559–62 (indicating no Special Education records found for Plaintiff).]

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Court's Scope of Review in Social Security Actions**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision).  Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012)*; Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).  Remand is unnecessary where "the record does not contain substantial

evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further

9

evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[9] With remand under sentence

---

[9]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-

six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98. The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings. *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is

---

cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992). Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990). Accordingly, the Court will apply the more stringent *Borders* inquiry.

engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.     *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575, 416.974–.975.

**B.    *Severe Impairment***

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.    *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[10]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[11] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[12]  20

---

[10]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[11]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[12]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation

C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

---

is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

**III.    Treating Physicians**

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c).  Similarly, where

16

a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also*

*Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re

18

not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity,

severity, degree or functional effect of pain is not
determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been

superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about

pain or other symptoms are not substantiated by the objective medical evidence, the

adjudicator must consider all of the evidence in the case record, including any statements

by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485;

*see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of

pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the

record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ

must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor. But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations

are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

As previously explained, Plaintiff is proceeding pro se, and he filed two handwritten briefs in this action contending that he is entitled to disability benefits due to his mental illness. [*See generally* Doc. 42; Doc. 47.] From Plaintiff's grounds of appeal, the Court categorizes the allegations of error into the following categories. The ALJ and/or the SSA hearing officer violated Plaintiff's rights to attend and testify at the hearing before the ALJ, and to be represented by counsel at the hearing. [Doc. 42 at 4–5.] The ALJ should have determined that Plaintiff is disabled based on the medical and other evidence and treating physician opinions in the record. Also, the ALJ's RFC determination was incorrect because it did not account for the side effects of his medicines.

The Court reiterates that judicial review of a Social Security decision is narrowly tailored "to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The Court understands that although the ALJ found Plaintiff had a severe impairment of paranoid schizophrenia, this finding does not, by itself, guarantee Plaintiff is entitled to DIB or SSI benefits; rather, in order to obtain benefits, the evidence must show Plaintiff's impairments are of a disabling severity. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir.1986) (stating the mere presence of impairments does not automatically entitle a claimant to disability benefits—the claimant must show functional loss related to his or her impairments); *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (stating a court's proper focus is not on a claimant's diagnosis but on the claimant's actual function limitations). As discussed herein, the Court finds that Plaintiff was not afforded his legal rights that the Social Security regulations require with respect to the ALJ hearing.

**Plaintiff's Right to Appear at the Hearing and/or Have Counsel Present**

Plaintiff challenges the ALJ's failure to grant him a continuance of the hearing so Plaintiff could find new counsel and obtain transportation to the hearing, leaving him "defenseless, weak and helpless." [Doc. 42 at 4.]  Pursuant to 20 C.F.R. §§ 404.950(a), 416.1450(a), "[a]ny party to a hearing has a right to appear before the administrative law judge . . . to present evidence and to state his or her position." *See Way v. Astrue*, 789 F. Supp. 2d 652, 663–67 (D.S.C. April 27, 2011) (finding error where the ALJ did not conduct the supplemental hearing Plaintiff requested because the claimant was prejudiced). Further, when the conditions in § 404.936(c)(1) exist, a party may appear by video teleconferencing or telephone. *See* 20 C.F.R. §§ 404.950(a).  Section 404.936(c)(1) provides,

> (c) Determining how appearances will be made. In setting the time and place of the hearing, we will consider the following:
>
> > (1) We will consult with the administrative law judge to determine the status of case preparation and to determine whether your appearance, or the appearance of any other party to the hearing, will be made in person, by video teleconferencing or, under extraordinary circumstances, by telephone. The administrative law judge will determine that your appearance, or the appearance of any other party to the hearing, be conducted by video teleconferencing if video teleconferencing equipment is available to conduct the appearance, use of video teleconferencing to conduct the appearance would be more efficient than conducting the appearance in person, and the administrative law judge determines that there is no circumstance in the particular case that prevents the use of video teleconferencing to conduct the appearance. The administrative law judge will direct you or another party to the hearing to appear by telephone when:
> >
> > > (i) An appearance in person is not possible, such as if you are incarcerated, the facility will not allow a hearing to be held at the facility, and video teleconferencing is not available; or

(ii) The administrative law judge determines, either on his or her own, or at your request or at the request of any other party to the hearing, that extraordinary circumstances prevent you or another party to the hearing from appearing at the hearing in person or by video teleconferencing.

(2) The administrative law judge will determine whether any person other than you or any other party to the hearing, including a medical expert or a vocational expert, will appear at the hearing in person, by video teleconferencing, or by telephone. If you or any other party to the hearing objects to any other person appearing by video teleconferencing or by telephone, the administrative law judge will decide, either in writing or at the hearing, whether to have that person appear in person, by video teleconferencing, or by telephone. The administrative law judge will direct a person, other than you or any other party to the hearing if we are notified as provided in paragraph (e) of this section that you or any other party to the hearing objects to appearing by video teleconferencing, to appear by video teleconferencing or telephone when the administrative law judge determines:

(i) Video teleconferencing or telephone equipment is available;

(ii) Use of video teleconferencing or telephone equipment would be more efficient than conducting an examination of a witness in person, and;

(iii) The ALJ determines there is no other reason why video teleconferencing or telephone should not be used.

Of course, the regulations provide that a party may waive his right to appear by sending the ALJ "a waiver or a written statement indicating that you do not wish to appear at the hearing." *See* 20 C.F.R. §§ 404.950(b). The evidence of record pertinent to whether Plaintiff waived his right to appear at the hearing is as follows. It appears Plaintiff filed a request for hearing before an administrative law judge ("ALJ") on February 22, 2011, [R. 137], and the hearing was scheduled for March 22, 2012. On March 20, 2012, it appears that Plaintiff's caregiver and Plaintiff sent a letter by facsimile to an SSA hearing officer, and

23

Plaintiff's caregiver spoke to the SSA hearing officer by telephone, to request that Plaintiff's hearing be postponed to another date because he did not have proper representation due to his lawyer withdrawing from the case at the last minute because he could not practice law in Augusta, Georgia, the site of the hearing. [R. 67, 363.] Additionally, Plaintiff indicated he did not have transportation to the hearing. [R. 67.] The letter also asked whether the judge could make a decision based on the medical records he already had. [*Id.*] On March 20, 2012, the SSA hearing officer told Plaintiff's caregiver that it would be better to appear at the hearing and then request a postponement. [R. 363.] On March 21, 2012, the ALJ denied Plaintiff's request for a postponement because the case had been in the system long enough and medical expert had been scheduled for the hearing. [R. 66.] On March 21, 2012, the SSA hearing officer left a voicemail for Plaintiff's caregiver that the judge had denied the request for postponement and she and Plaintiff should be present at the hearing set for the next day. [R. 364.] On March 22, 2012, the SSA hearing officer spoke with Plaintiff's caregiver on the telephone, and Plaintiff's caregiver stated that "her car was wrecked and she couldn't find transportation for either she or Mr. Odom and she just wanted Judge Northington to base her decision on the records already submitted." [R. 365.]

Based on those communications, on March 22, 2012, the ALJ made a finding on the record at the hearing that his staff had contacted the claimant and his spouse to determine whether Plaintiff wanted a continuance to obtain counsel or requested a decision based on the evidence of record; and, the ALJ stated that Plaintiff and his spouse had communicated they were having car problems and "have requested that I adjudicate the matter on the record." [R. 42–43.] In other words, the ALJ found that Plaintiff waived his right to appear

24

at the hearing. Thereafter, the ALJ conducted Plaintiff's hearing at which a medical expert appeared in person and a vocational expert testified via telephone. [R. 40–64.]

Upon review of the written letter to the ALJ requesting a postponement and notations of the telephone calls, the Court finds that Plaintiff wanted to be present at his hearing, and it appears that Plaintiff was not offered the option to appear via telephone at the hearing even though the Administration's regulations contemplate that a claimant can appear by telephone under certain circumstances[13] and even though a vocational expert was permitted to testify via telephone. Although the written letter mentioned that Plaintiff may want the ALJ to decide his case on the medical records already provided, Plaintiff first wanted a postponement of the hearing. The ALJ did not determine whether a wrecked car and lack of other transportation presented a circumstance to permit Plaintiff to testify by telephone. When Plaintiff was advised that the ALJ rejected a postponement, and Plaintiff was not offered the choice to testify via telephone at the hearing, only then did Plaintiff's caregiver tell the SSA hearing officer to decide the case on the record because the car was wrecked and they could not find transportation. Such a communication by Plaintiff's caregiver is not sufficient to satisfy the waiver provision of 20 C.F.R. §§ 404.950(b).

And, while lack of representation by counsel is not by itself an indication that a hearing was not full and fair, it is settled that where the absence of counsel created clear prejudice or unfairness to the claimant, a remand is proper. *See Sims v. Harris*, 631 F.2d 26, 27–28 (4th Cir. 1980) (citing *Dombrowolsky v. Califano*, 606 F.2d 403 (3rd Cir. 1979)).

---

[13]Plaintiff does not specifically contend that the ALJ erred by failing to offer Plaintiff the choice to testify by telephone. However, the pro se Plaintiff may very well not have known about this possibility, and his broader argument that the hearing should have been postponed so he could appear would encompass such a contention.

It is equally settled that in pro se cases, ALJs have a duty to assume a more active role in helping claimants develop the record. *Crider v. Harris*, 624 F.2d 15, 16 (4th Cir. 1980). Examining the record in light of the ALJ's heightened responsibility suggests Plaintiff suffered prejudice and unfairness because he was unable to attend the hearing (in person or via telephone) and was without counsel. Specifically, the ALJ made several conclusions based on Plaintiff's past work history and his noncompliance with medication to which Plaintiff was not given an opportunity to respond by testimony or further evidence. Because Plaintiff was not given an opportunity to attend the hearing and was without counsel, and in light of the nature of his alleged mental impairment, the Court finds remanding the case to allow Plaintiff an opportunity to testify with witnesses, and possibly appear with counsel, is appropriate.

**Plaintiff's Remaining Arguments**

On remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error, especially whether the RFC determination is correct in light of the side effects of Plaintiff's medications and in light of the treating physicians' opinions. Also, the Commissioner should reconsider whether Plaintiff's severe impairment meets a Listing, taking into account any future witness's testimony and other evidence.[14]

---

[14]It appears that Plaintiff is currently incarcerated in state prison. Therefore, the Commissioner should consider the appropriate time frame for payment of benefits, if awarded, and whether payment is in accordance with the SSA regulations. *See Davis v. Bowen*, 825 F.2d 799, 800–01 (4th Cir. 1987); 20 C.F.R. § 404.468.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED and the case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action consistent with this recommendation.

**IT IS SO RECOMMENDED**.


January 30   , 2015                          s/Jacquelyn D. Austin
Greenville, South Carolina                   United States Magistrate Judge